```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

John Lawrence Swartz,         :

     Plaintiff,            :

    v.                        :    Case No. 2:13-cv-0319

Commissioner of Social        :    JUDGE PETER C. ECONOMUS
    Security,                      Magistrate Judge Kemp
                                :
     Defendant.

                      REPORT AND RECOMMENDATION

                        I.   Introduction

    Plaintiff, John Lawrence Swartz, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on May 8, 2009 and alleged that Plaintiff became disabled on September 1, 2005.

    After initial administrative denials of his applications, Plaintiff was given a hearing before an Administrative Law Judge on August 18, 2011.  In a decision dated September 19, 2011, the ALJ denied benefits.  That became the Commissioner's final decision on February 9, 2013, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on June 6, 2013.  Plaintiff filed his statement of specific errors on June 17, 2013.  The Commissioner filed a response on August 22, 2013.  No reply brief was filed, and the case is now ready to decide.

    II.  Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 48 years old at the time of the administrative hearing and had a high school education with some

college, testified as follows. His testimony appears at pages 38-56 of the administrative record.

Plaintiff last worked doing home construction, a job which required heavy lifting. He was also on his feet all day. He testified that over the years, his pain has gotten worse to the point where he cannot work. He had knee surgery in 2009 but suffered complications due to allergic reactions, and also had a very long period of rehabilitation due to swelling. He had surgery on the other knee in 2011, and was still having problems with that knee as of the date of the hearing.

Plaintiff testified to problems both standing and walking. He could only stand for a few minutes before needing to sit down. He was able to walk 50-100 feet and often used a cane while walking. Additionally, he had neck and back pain. He had taken pain medication at one time but discontinued it due to side effects such as drowsiness and depression. He was seeing a doctor for depression.

Plaintiff lived alone but was able to care for himself. He spent a substantial amount of time just moving around to ease his pain. He did not think he could do even sedentary work because his arms and legs get numb when he sits too long. He did spend time reading and watching television and was able to drive to run errands several times a week or visit with friends. He was not undergoing active treatment for back pain as of the date of the hearing, and his knees were better after surgery, but he had delayed the surgery for some time due to lack of health insurance.

### III. The Medical Records

The medical records in this case are found beginning on page 260 of the administrative record. The pertinent records, all of which relate to Plaintiff's psychological condition, can be summarized as follows. The Court will also summarize notes from

Plaintiff's caseworker, which are found among the documents described as "Disability Development."

Exhibit 6F is a 38-page set of counseling notes prepared when Plaintiff was treated at Moundbuilders Guidance Center. They cover portions of both 2008 and 2009.  They show that, initially, a provisional diagnosis of generalized anxiety disorder was made, and that Plaintiff's GAF was rated at 60.  The treatment recommendation was individual counseling.  A diagnosis of major depression was later added.  The notes contain extensive discussion of some relationship issues and record stress from lack of work and financial issues.  Plaintiff declined a psychiatric referral for medication.  He did indicate he had worked for period of time in 2008 and that he was also looking for work.  He mentioned returning to school as well.  (Tr. 293-330).

On September 15, 2009, Dr. Terry, a state agency psychologist, completed a psychiatric review technique form.  She indicated on the form that Plaintiff had an affective disorder, major depression, which she characterized as moderate.  She also reviewed the Moundbuilders notes and pointed out that they did not contain any functional limitations.  She concluded that there was insufficient evidence in the file to assess Plaintiff's functional capacity for his Title XVI claim, and stated that attempts to get further information from either Plaintiff or his primary care physician had been unsuccessful.  (Tr. 346-59).

Plaintiff was examined consultatively by Dr. Reece, a psychologist, on July 6, 2010.  He reported that he got along with neighbors but had some issues with people in authority.  He was still going to counseling sessions at Moundbuilders and said that he had "bad nerves."  He told Dr. Reece he was not working due to physical problems, but then added that mental health problems were contributing factors.  His affect was somewhat

restrictive and he said he usually felt "flat."  He was depressed over the loss of his most recent relationship and expressed feelings of helplessness and hopelessness.  Lithium had successfully eliminated mood swings and racing thoughts.  He did not show signs of anxiety.  IQ testing revealed an IQ in the average range.  Dr. Reece concluded that Plaintiff suffered from a bipolar disorder and an anxiety disorder.  His GAF was rated at 60.  Dr. Reece thought Plaintiff could relate to others and understand and recall instructions, and that he could maintain attention, concentration, persistence, and pace.  However, he was moderately impaired in his ability to deal with work pressure. (Tr. 370-74).  These conclusions were affirmed in large part by another state agency reviewer, Dr. Warren, who thought that Plaintiff was actually less limited in his ability to deal with work pressure than Dr. Reece had stated.  (Tr. 377-90).

Plaintiff apparently began to see Dr. Khan sometime in 2009. Notes of their sessions together appear in the record as Exhibit 17F.  They show that Dr. Khan diagnosed major depression, described as "recurrent, moderate"; that he prescribed various medications, including lithium, Remeron and Celexa; that he rated Plaintiff's GAF at 51 or 52 during a visit on June 24, 2009; and that at most office visits, Plaintiff described himself as doing "pretty well," was satisfied with the medication regimen, and simply wanted a refill of his prescriptions.  (Tr. 454-74).

The last document among the medical records is a mental functional capacity form which Dr. Khan filled out on August 17, 2011.  He noted the following marked impairments: relating to the general public, performing at a consistent pace, processing information accurately, carrying out tasks independently, maintaining attention and concentration for more than brief periods of time, performing at reasonable production levels, behaving in an emotionally stable manner, and tolerating

-4-

customary work pressures.  He also reported that Plaintiff had lost jobs in the past due to "expression of interpersonal demands."  (Tr. 475-77).

Last, the Court will summarize the caseworker's reports found at Tr. 221-37.  There are two of these in the record although they appear to be identical.  The report describes symptoms including racing thoughts and lack of sleep and notes that at times Plaintiff refused to take his medication.  He also was unable to stay on task.  Ms. Orner said at the end of that report that, in her professional opinion, Plaintiff could not sustain gainful employment due to his mental health issues.

IV.  The Vocational Testimony

A vocational expert, Dr. Mitchell, also testified at the administrative hearing.  His testimony begins at page 56 of the record.

Dr. Mitchell characterized plaintiff's past work as a contractor as heavy and skilled.

Dr. Mitchell was asked some questions about a hypothetical person who could perform a limited range of sedentary work - that is, the person could lift up to twenty pounds occasionally and ten pounds frequently, could stand or walk for two hours in a work day and sit for six hours, could not climb ladders, ropes or scaffolds, could occasionally climb stairs and ramps, and could occasionally kneel, crawl and balance.  That person also would be limited to work which was simple, routine, and repetitive in nature, and he or she needed to work in a low-stress setting with only occasional decision-making and only occasional changes in the work setting.  Also, any production quotas would have to be end-of-the-day measurements, and interaction with the public had to be limited.  With those restrictions, Dr. Mitchell testified, such a person could not do Plaintiff's past work, but could do jobs such as assembler, hand packer, and hand labor.  Taken

together, about 3,000 of these jobs existed in the state economy. Limiting the person to occasional interactions with both the public and supervisors would not affect the availability of these jobs.

Dr. Mitchell was then asked to assume that the person could sit, stand or walk for a cumulative total of less than eight hours in a workday, and could sustain neither an eight-hour workday nor a forty-hour work week. Those limitations would prevent the person from doing any jobs. The same would be true if the person would be off task for at least 20% of the workday in addition to scheduled breaks.

                V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 19 through 29 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through September 30, 2005. Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of August 30, 2006 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including "osteoarthritis of the bilateral knees status post total bilateral arthroplasties, obesity, and mood disorder." (Tr. 21). The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a range of sedentary work with these limitations: he could lift, carry or push 20 pounds occasionally and ten pounds frequently; he could sit for four hours at a time

and for a total of eight hours in a work day; he could walk or stand for up to two hours in a work day; he could never climb ladders, ropes or scaffolds; he could occasionally climb ramps and stairs; and he could occasionally balance, kneel and crawl. Also, he was limited to the performance of simple, routine and repetitive tasks in a low stress environment with only occasional changes in the workplace setting, only occasional decision-making, only occasional interaction with the public, and with only end-of-workday production quotas. The ALJ found that, with these restrictions, plaintiff could not perform his past relevant work, but could perform the jobs identified by Dr. Mitchell (production assembly worker, hand packager, and hand laborer), and that such jobs existed in significant numbers in the local and national economies. Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises three issues. He argues that (1) the ALJ improperly rejected the opinions of his treating psychologist, Dr. Kahn; and (2) the ALJ failed properly to consider evidence from non-medical sources (in particular, his caseworker, Ms. Orner). The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th

Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

     A. Treating Source Opinion Evidence

  The first issue raised in plaintiff's statement of errors relates to the ALJ's evaluation of Dr. Kahn's opinion. Any discussion about whether an ALJ properly evaluated the opinion of a treating source must begin with the ALJ's decision on that issue.

  The ALJ, after reviewing Dr. Khan's functional capacity assessment, gave it "limited weight" (Tr. 28). He did so because of inconsistencies he perceived between the treatment notes and Plaintiff's report of his activities, on the one hand, and the functional limitations imposed by Dr. Khan, on the other. The ALJ found Dr. Reece's evaluation to be generally consistent with the treatment record, but he resolved doubts in Plaintiff's favor and found more restrictions that those reported by Dr. Reece. Earlier in his decision, the ALJ discussed Dr. Khan's treatment notes, pointing out that the notes showed that Plaintiff was doing fairly well and was satisfied with his medications. The

-8-

ALJ viewed the notes (but not Dr. Khan's subsequent opinion) as "consistent with the residual functional capacity identified in this decision."  (Tr. 27).

Plaintiff takes issue with this evaluation of Dr. Khan's opinion on two levels.  First, he contends that the ALJ did not adequately identify the inconsistencies he relied on in refusing to grant controlling weight to Dr. Khan's opinion.  Second, he performs his own analysis of the factors listed in 20 C.F.R. §416.927 and argues that such a review compels the conclusion that Dr. Khan's opinion should have been afforded controlling weight.  In response, the Commissioner asserts that the ALJ's reference to the treatment notes and relatively normal findings sufficiently explained why he rejected the more extreme opinions expressed by both Dr. Khan and Ms. Orner, as did his reference to Plaintiff's activities of daily living, which appeared largely unaffected by mental health issues.  Although the Commissioner also provides additional reasons which the ALJ may have used in discounting Dr. Khan's opinion, because the ALJ himself did not articulate these reasons, the Court cannot consider them, and will limit its discussion to what the ALJ actually said in his decision.

The question raised by Plaintiff's first statement of error is whether the ALJ gave good reasons for assigning limited weight to Dr. Khan's opinion and, if so, whether those reasons are supported by the record. See Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).  In regard to the "articulation" requirement, as explained in its later decision in Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), "[t]here is an additional procedural requirement associated with the treating physician rule."  Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight.  Two reasons underlie this

procedural requirement.  First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled.  Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way.  Id.

Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record.  Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  Id. at 243, citing Wilson, 378 F.3d at 544.  If the articulation requirement is satisfied, however, then the question become the usual one of determining whether the reasons given for assigning less than controlling weight to the opinion of a treating source find substantial support in the record.  See generally Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).

The ALJ was not overly generous in his explanation of why he did not find Dr. Khan's opinion entitled to controlling weight.  In the specific paragraph where the ALJ reached that conclusion, he did make only the general statement - the one with which Plaintiff takes issue - that there were inconsistencies between Dr. Khan's treatment notes, Plaintiff's activities of daily living, and Dr. Khan's extreme limitations on Plaintiff's ability to function in the workplace, and he did not identify them precisely.  However, if the ALJ's decision is read in its entirety, including the discussion of Dr. Khan's notes found at

Tr. 25, it is apparent that the inconsistencies include the fact that, in those notes, Plaintiff's "appearance, behavior, speech, thought process, and mood were all normal,... his cognition was intact and his insight was fair."  Also, at other appointments, the ALJ noted as significant the comment that "claimant was notably 'doing pretty well' and satisfied with the benefits of the medicines despite **some** residual racing thoughts."  These reports were all deemed consistent with the ALJ's residual functional capacity finding.  Id.  So, too, were Plaintiff's ability to live independently, to care for his personal needs, to prepare simple meals, to do household chores, to read, watch television, socialize, drive, shop for groceries, and to talk with friends and family on the phone.  These detailed references both to Dr. Khan's notes and Plaintiff's activities of daily living give content to the ALJ's articulated reasons for discounting Dr. Khan's opinions, and are sufficient to satisfy Wilson and Rogers.  See, e.g., Nelson v. Comm'r of Social Security, 195 Fed. Appx. 462 (6th Cir. Aug. 28, 2006)(an ALJ's decision satisfies Wilson if it implicitly or indirectly attacks the consistency and supportability of the treating source opinions and meets the goal of informing the claimant and the Court of the details of the ALJ's reasoning process).

     It is also evident that the ALJ accurately recounted the evidence concerning both Plaintiff's activities of daily living and what he reported to Dr. Khan.  As the Court's summary of both Plaintiff's testimony and the medical records shows, Plaintiff was able to function independently; the consultative examiner, who took a social history from Plaintiff, found that he was not more than moderately impaired in any work-related areas; and Plaintiff did consistently report to Dr. Khan that he was doing well, was satisfied with his medications, that they helped to control his symptoms, and that he simply wanted refills for them. All of these reasons provide substantial support for giving less

than controlling weight to Dr. Khan's opinions.  It should also be noted that the ALJ did not reject entirely the notion that Plaintiff was more impaired due to psychological issues than either the consultative examiner or the state agency reviewers concluded, and that a significant amount of weight was given to Dr. Khan's views.  Under these circumstances, the Court finds no error in the ALJ's consideration of Dr. Khan's opinions about disabling psychologically-based limitations.  <u>See, e.g., Scott v. Comm'r of Social Security</u>, 2013 WL 6065777 (N.D. Ohio Nov. 15, 2013)(finding inconsistencies between findings in treatment notes and the claimant's activities of daily living, on the one hand, and the treating source's opinion, on the other, sufficient to allow an ALJ to afford less than controlling weight to that opinion).

### B.  <u>The Non-medical Opinion</u>

Plaintiff's second assignment of error focuses on the ALJ's treatment of the report made by Ms. Orner, the case manager.  As described above, were that report accepted in its entirety, including the opinions which Ms. Orner expressed, Plaintiff would meet the standards for disability.  Plaintiff argues that even though Ms. Orner was not a "medical source" as defined in the applicable regulation, the ALJ did not properly apply Social Security Ruling (SSR) 06-03p, which treats such opinions as important and stresses the need to evaluate them on issues such as impairment severity.  Plaintiff faults the ALJ for giving essentially no weight to Ms. Orner's opinion and for citing to reasons for rejecting it which do not support that rejection.  The Commissioner, in response, argues that the ALJ properly observed that Ms. Orner's reports were contradicted by the record and that she also expressed an opinion on the ultimate issue of disability which the ALJ was not required to accept or credit.

The ALJ summarized the findings and conclusions from Ms. Orner's report at pages 7 and 8 of his decision (Tr. 25-26).

There, he notes that the report was contradictory because it painted Plaintiff both as a person with severe delusional behavior and as one who functioned normally in social settings. He gave it no weight for that reason.  As noted above, he then assessed Plaintiff's residual mental functional capacity based on a consideration of the medical evidence, including the reports of Drs. Khan and Reece and the state agency reviewers.  (Tr. 26).

The ALJ's decision recites that he considered the opinion evidence of record "in accordance with the requirements of ... SSR[] ... 06-3p."  (Tr. 24).  He was aware that Ms. Orner was a case manager and had expressed an opinion as to Plaintiff's functional capacity.  SSR 06-3p states that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning ...." This does not create an independent regulatory duty to articulate the ALJ's reasoning in the same way required for an opinion rendered by a treating source.  See, e.g., Robinson v. Comm'r of Social Security, 2012 WL 194966, *12 (N.D. Ohio Jan. 20, 2012)("there is no controlling precedent requiring an ALJ to explicitly address written statements such as" a function report from a case manager).  Rather, all that is needed is a sufficient discussion of all of the evidence of record to demonstrate that the ALJ considered the key factors of "'supportability and consistency'" in deciding how much to credit these types of reports.  See Action v. Comm'r of Social Security, 2013 WL 3761126, *5 (S.D. Ohio July 16, 2013), quoting Kerlin v. Astrue, 2010 WL 3937423, *8 (S.D. Ohio March 25, 2010), adopted and affirmed 2010 WL 3895175 (S.D. Ohio Sept. 29, 2010).

Here, the ALJ correctly identified inconsistencies both within Ms. Orner's report and between some of her conclusions and the other evidence of record.  It is clear that the ALJ did

consider her report and was aware of the need to do so under SSR 06-03p.  Additionally, the administrative decision satisfies that portion of the regulation, quoted above, which requires an ALJ to "otherwise" ensure that the basis for his decision-making appears in his written adjudication.  In this case, the bases for the ALJ's rejection not only of Ms. Orner's report, but also Dr. Khan's, appear sufficiently clearly in his decision.  As a result, there has been no violation of SSR 06-3p, and there is a substantial basis for concluding that Plaintiff was not as impaired as Ms. Orner believed.  Thus, there is no merit to this second assignment of error.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

>                                     /s/ Terence P. Kemp
>                                     United States Magistrate Judge